## VIRGINIA COUPON CASES.

JONES *v.* COMMONWEALTH OF VIRGINIA and five other like Cases. (Removed from Hustings Courts of Cities of Richmond and Norfolk.)

(*Circuit Court, E. D. Virginia.* December 19, 1835.)

1. VIRGINIA COUPONS—VIRGINIA STATUTE OF JANUARY 14, 1882.
    The act of assembly of Virginia of January 14, 1882, "to prevent frauds upon the commonwealth," authorizes the trial by jury of only two questions respecting coupons offered in payment of taxes, viz.: *First.* Whether the coupons are genuine, not spurious; and, *second,* whether they are "legally receivable" for taxes in being offered for the first time, and never previously used for the purpose.
2. SAME—REMOVAL OF CASES TO UNITED STATES COURT.
    The acts subsequently passed forbidding the receipt of genuine coupons for taxes, which impair the state's contract that they shall be so receivable, were not in the contemplation of the legislature of 1882, and not within the evils which that legislature designed to provide against; and that body could not have intended to submit to a jury, as issues of fact, controverted questions of constitutional law in authorizing it to determine whether certain coupons are "legally receivable" for taxes. Therefore, no federal question can arise in the jury trials authorized by the act of 1882, and the suits it authorizes cannot be removed into a federal court.
3. STATUTES—CONSTRUCTION OF REMEDIAL STATUTES.
    Remedial statutes must be construed with reference to the evils intended to be provided against, and not enlarged to embrace other subjects not in the contemplation of the legislature.

Motion to Remand.

*W. L. Royall, W. H. Sand, A. B. Guigon, George H. Bryan,* and *Dilland & Davis,* for petitioner.

*F. S. Blair,* Atty. Gen., for State of Virginia.

HUGHES, J. These causes were pending in the hustings court for the city of Richmond, and one of them in that of Norfolk, on petitions for the verification of coupons cut from bonds of Virginia which had been tendered for taxes under the act of the general assembly approved January 14, 1882, "to prevent frauds upon the commonwealth," etc. The ground on which they have been brought here is that, as petitioners claim, they involve a federal question.

The act provides that, when coupons are tendered in payment of taxes due the commonwealth, the revenue officer shall receive and give receipt for them; shall make them up in a package, and indorse the initials of the tax-payer upon the package; and shall deliver the package to the judge of the county or corporation court of the county or corporation in which the taxes are payable. It then authorizes the tax-payer to file a petition in that court calling for a jury, and directs that a jury shall be impaneled to try the question whether "the coupons are genuine, legal coupons which are legally receivable for taxes." The petitioners allege that the state has passed laws subsequent to that under consideration, which forbid her revenue officers to receive coupons for taxes; some of them wholly, and some of them in part. They charge that these later laws violate the constitution of the United States by impairing the contract engraved on the face of all the coupons, setting forth that they shall be receivable for all taxes and dues to the state. They allege that the question of the validity of these later laws must arise before the juries impaneled to try the issue whether the coupons are genuine and "legally receivable" for taxes, which is a federal question; and they insist that the cases at bar were removable into this court because of the federal question involved, more than $500 of coupons having been tendered in each case.

The argument for jurisdiction thus presented is cogent and plausible, and is worthy of careful consideration. The inquiries on which the decision must turn are, what was the meaning of the legislature in the act by which it submits certain issues to the jury in cases brought for the verification of coupons? and what question or questions did it intend that the jury should try?

The act of January 14, 1882, on which all those cases are founded, recites that bonds of the commonwealth, purporting to have been issued under her funding acts of 1871 and 1879, are in existence without authority of law, which are spurious, stolen, or forged, bearing coupons similar to those receivable for taxes, which are, of course, likewise spurious, stolen, or forged. It recites, furthermore, that there are outstanding, genuine coupons from genuine bonds, which, after having been once received in payment of dues to the state, are fraudulently reissued, and offered more than once in such payments. It, therefore, for the purpose of preventing frauds upon the commonwealth in this matter, proceeds to provide a way for verifying the genuineness of all coupons offered for taxes, and testing whether genuine ones are tendered a second time in payment of taxes. The manner in which the act directs the trial of these questions has been already indicated. The evils at which the statute was aimed were— *First*, the use of spurious coupons; and, *second*, the use more than once of genuine coupons,—in payment of taxes. The act provides, in substance and intention, that the jury shall try—*First*, whether the coupons are "genuine, legal coupons," not spurious; and, *second*,

whether, if genuine, they are "legally receivable" for taxes in being now used for the first time. That was the whole and sole intention of the legislature in the matter of the verification of the coupons.

Construed with reference to the evils existing at the time of its enactment, as set out in its preliminary clauses, I am convinced that I have thus stated the plain, natural, precise meaning of the act of January 14, 1882. If the language, "a jury shall be impaneled to try the question as to whether the coupons offered are genuine, legal coupons, which are legally receivable for taxes," had been used in some other statute passed to remedy some other evils, it is conceivable that the submission of some other questions, even controverted questions of constitutional law, to the jury of a county or corporation court, might possibly have been intended. But it is an elementary principle of construction that all remedial statutes must be construed with reference to the evils sought to be remedied, and not enlarged to embrace matters, incongruous in nature, which could not have entered into the contemplation of the legislature.

When the language of a clause of such a statute is not precise, and admits of application beyond the evils it was designed to provide against, a court is not only at liberty but is bound to look over the whole statute, and to restrict the clause to a meaning consonant with the plain object of the legislature. That object, once understood, courts are so to construe a remedial act as to suppress the evil aimed at and advance the remedy provided for its suppression. The real intention of a statute, when once collected with certainty, must always be made to prevail over the literal sense of its terms. It must be expounded, not according to its letter, but to its intention. These are elementary canons of statutory construction, and they are conclusive of the motion to remand these cases. For, applying them, it is clear to me that the act of January 14, 1882, "to prevent frauds upon the commonwealth" perpetrated by paying spurious coupons for taxes, and by the repeated use of coupons which are not "legally receivable" more than once in payment of taxes, meant, and could have meant, that none but such questions of fact should be submitted to the jury, and had reference to the "frauds" pointed out by the act as the evils designed to be remedied.

The passage of laws by subsequent legislatures forbidding the receipt of genuine coupons a single time for taxes was not in the contemplation of the legislature of 1882; nor could the receipt of coupons a single time have been contemplated as a fraud within the evils to be remedied by the act of 1882, because that act expressly declares it to be an object of the measure it provided "to protect the rights of bondholders, and to enforce the contract between them and the commonwealth," which stipulates that genuine coupons shall each be legally receivable once in payment of taxes.

Thus interpreting the act under consideration, I cannot suppose for a moment that in a summary proceeding by petition, without

other pleadings, the legislature intended that a jury should be called upon to try grave questions of constitutional law. If it did not, then no "federal question" can legitimately arise in the cases instituted for the verification of coupons; and for this reason, if for no other, they cannot be removed into a federal court. It is in vain for counsel for the petitioner to insist that the state, in the trial of these jury issues, does, in point of fact, call upon them to pass upon the validity of those more recent laws of her legislature which forbid the receipt of coupons for taxes, either for verification or any purpose. It is for the judges of the courts trying these cases to instruct the juries that such questions are not within their cognizance. If these judges refuse so to instruct, then, appeal being allowed by the act of 1882 to the circuit and supreme courts of the state, redress would lie in that direction, and be ultimately obtainable in the supreme court of the United States. The *route* to redress does not lie through this court by means of removal. We cannot assume, before a case is tried in a county or corporation court, that its judge will allow a question of constitutional law to be submitted as a question of fact to a jury. We cannot do such violence to all legal probabilities and to all judicial amenities as to assume that such a happening would be possible. If it be, then redress must be sought by appeal, not removal. These causes must all be remanded.